IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CR-23-71-D |
| ) | |
| TATYANNA MARIE JOHNSON, ) | |
| ) | |
| Defendant. ) | |

**FINDINGS OF FACT, CONCLUSIONS
OF LAW, AND ORDER**

This matter comes before the Court on Defendant Tatyanna Marie Johnson's Motion to Suppress [Doc. No. 50]. The government filed a response opposing Ms. Johnson's motion [Doc. No. 84], and the Court held an evidentiary hearing on the matter on July 17, 2023. At the hearing, Ms. Johnson appeared personally and through appointed counsel, David Autry. The government appeared through Assistant United States Attorney Danielle Connolly. Upon consideration of the evidence, the case record, and the parties' arguments, the Court finds and rules as follows.

*Findings of Fact*

On February 5, 2023, a vehicle in which Ms. Johnson was traveling as a passenger was pulled over. Certain evidence was seized as a result of the traffic stop, and Ms. Johnson was subsequently charged with (1) drug conspiracy in violation of 21 U.S.C. § 846; and (2) possession of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). *See* Indictment [Doc. No. 1]. Ms. Johnson has moved to suppress the evidence

from which the indictment stems. The Court heard testimony from Oklahoma City Police Department ("OCPD") Officer Preston Wallace and Oklahoma County Sheriff's Office Deputy John Miller; each testified concerning the events leading up to the traffic stop. At the hearing, the government also played a recording from a dashcam situated in Deputy Miller's patrol vehicle.[1] This evidence establishes the following facts pertinent to Ms. Johnson's motion, as found by the Court.

Officer Preston Wallace is a master sergeant with the OCPD. He has been with the department for twenty-three years and is also a member of the Criminal Interdiction Team of Central Oklahoma ("CITCO").[2] On the morning of February 5, 2023, Officer Wallace was traveling east on Interstate 40 near downtown Oklahoma City when he noticed a black Chevrolet Malibu with an Illinois-issued license plate. After discovering that the Malibu's license plate was expired, Officer Wallace attempted to position his vehicle behind the Malibu to initiate a traffic stop. Preventing him from doing so was a maroon Dodge Ram pickup; Officer Wallace testified that, at times, only two to three feet separated the Malibu and pickup, and that the vehicles were changing lanes in tandem. Officer Wallace looked up the pickup's license plate, which was from Kentucky, and discovered that the pickup was a rental vehicle.

The vehicles eventually merged onto northbound Interstate 35. Officer Wallace continued to follow the vehicles and informed other CITCO members, including Deputy

---

[1] The recording was conventionally filed with the Court. *See* [Doc. Nos. 85, 86].
[2] CITCO is comprised of OCPD officers and Oklahoma County Sheriff's Office deputies; it focuses on criminal interdiction through traffic enforcement.

2

John Miller,[3] that he had witnessed a traffic infraction and was attempting to initiate a traffic stop, but that the pickup was preventing him from doing so. Eventually, the vehicles exited at NE 36th Street. Soon after exiting, the pickup pulled into a gas station, located at 2920 NE 36th Street,[4] while the Malibu continued west. The gas station was under construction and was closed to customers. Officer Wallace followed the Malibu and notified other CITCO members that the pickup stopped at the gas station.

In an effort to assist Officer Wallace, Deputy Miller[5] traveled to 2920 NE 36th Street. As he drove past the closed gas station, he observed that the pickup was parked at one of the gas pumps. Although he initially continued west on NE 36th Street, he decided to make contact with the pickup, and promptly turned around. After doing so, he observed the pickup exit the gas station and turn eastbound onto NE 36th Street. Deputy Miller testified that, upon exiting, the pickup made a wide turn onto the street and straddled the center lane line for several feet, which caused him to activate his overhead lights and initiate a traffic stop.

The pickup was subsequently searched after Deputy Miller initiated the traffic stop; the search uncovered a detectable amount of methamphetamine, as charged in the indictment. By her motion, Ms. Johnson has challenged the validity of the traffic stop from

---

[3] Around this time, Deputy Miller was stationed on Interstate 35 between NE 50th Street and NE 63rd Street.

[4] Officer Wallace and Deputy Miller both testified that, at the time, the gas station was closed for renovations. As depicted in Deputy Miller's dashcam recording, a large trash dumpster and several storage containers are situated in the gas station's parking lot.

[5] Deputy Miller has worked in law enforcement for seven years, including nearly two years at the Oklahoma County Sheriff's Office. He is a CLEET-certified police officer through the State of Oklahoma.

which the indictment stems.[6] She argues that, "[b]ecause the traffic stop was invalid at its inception, the evidence seized in the search of the truck, including all drug evidence and any cell phone(s) belonging to [her], was the fruit of the poisonous tree and should be suppressed." Def.'s Mot. to Suppress at 1.

## Conclusions of Law

A traffic stop constitutes a seizure under the Fourth Amendment and thus, is "subject to review for reasonableness." *United States v. Mayville*, 955 F.3d 825, 829 (10th Cir. 2020). "To be reasonable, a traffic stop must be justified at its inception and, in general, the officer's action during the stop must be reasonably related in scope[7] to the mission of the stop itself." *Id.* It is well-settled that "a traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable suspicion that a traffic or equipment violation has occurred or is occurring." *United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995). In addition, "a law-enforcement officer may also stop a vehicle if the officer harbors 'a reasonable suspicion that other criminal activity may be afoot.'" *United States v. Martinez*, 910 F.3d 1309, 1313 (10th Cir. 2018) (quoting *United States v. Whitley*, 680 F.3d 1227, 1233 (10th Cir. 2012)). For the reasons set forth herein, the Court finds that the traffic stop of the pickup in which Ms. Johnson was traveling was constitutionally permissible. Accordingly, Ms. Johnson's motion is **DENIED.**

---

[6] As a passenger in the vehicle, Ms. Johnson has standing to challenge the validity of the initial stop. *See United States v. White*, 584 F.3d 935, 945 (10th Cir. 2009).

[7] Ms. Johnson only challenges the initial justification for the traffic stop, not its scope.

4

I.  **Observed Traffic Violation**

Tenth Circuit "precedents leave no room to doubt the validity of a traffic stop based on an observed traffic violation." *United States v. Winder*, 557 F.3d 1129, 1135 (10th Cir. 2009). "An observed traffic violation or a reasonable suspicion of such a violation under state law plainly justifies a stop." *United States v. Gregoire*, 425 F.3d 872, 876 (10th Cir. 2005). "Observed traffic violations necessarily 'afford the quantum of individualized suspicion necessary to ensure that police discretion is sufficiently constrained.'" *Winder*, 557 F.3d at 1135 (quoting *Whren v. United States*, 517 U.S. 806, 817-18 (1996)).

Ms. Johnson argues that the driver of the pickup did not violate any applicable traffic regulation. For the reasons that follow, the Court rejects Ms. Johnson's argument and concludes that the driver of the pickup committed two separate traffic infractions: (1) an improper right turn;[8] and (2) failure to maintain a single lane.[9] These observed traffic infractions justified the stop at its inception. *See Mayville*, 955 F.3d at 829.

The Court first addresses the improper right turn. Pursuant to Okla. Stat. tit. 47, § 11-604(A), "no person shall turn a vehicle at . . . a public or private road, or driveway unless the vehicle is in proper position upon the roadway as required in [Okla. Stat. tit. 47, § 11-601]." Okla. Stat. tit. 47, § 11-601(1) instructs that "a right turn shall be made as close as practicable to the right-hand curb or edge of the roadway."

According to Deputy Miller's testimony, when the pickup turned right onto NE 36th Street, he observed it drift into the left-hand lane for several feet, rather than turn directly

---

[8] *See* Okla. Stat. tit. 47, §§ 11-601(1), 11-604(A).
[9] *See* Okla. Stat. tit. 47, § 11-309(1).

into the right-hand lane. Indeed, a review of the dashcam recording from Deputy Miller's patrol vehicle supports this testimony. Nonetheless, Ms. Johnson argues that the driver of the pickup did not violate Oklahoma law because Okla. Stat. tit. 47, § 11-601(1)'s strictures only apply to turns made at "intersections." In Ms. Johnson's view, because the pickup was not turning at an "intersection" as defined by Oklahoma law, there could be no violation of Okla. Stat. tit. 47, § 11-601(1).

Even if the Court were to accept Ms. Johnson's argument that the driver did not violate Okla. Stat. tit. 47, § 11-601(1) because the turn was not made at an intersection, the Court still finds that the driver of the pickup violated Okla. Stat. tit. 47, § 11-604(A). The evidence showed that the pickup was turning onto a public road, specifically, NE 36th Street. By failing to turn "as close as practicable to the right-hand curb" of the public road, the driver of the pickup committed a traffic infraction under Oklahoma law.[10] *See* Okla. Stat. tit. 47, § 11-604(A).

Turning to the pickup driver's second infraction, Deputy Miller credibly testified that the pickup continued to straddle the center lane line for several feet after exiting the gas station. A review of the dashcam recording from Deputy Miller's patrol vehicle, and a still, screenshot from the video also admitted into evidence, confirms that, as the pickup continued eastbound, a significant gap existed between the pickup and the curb bordering

---

[10] Ms. Johnson alternatively argues that, because the pickup adhered to the applicable traffic regulation "as much as practicable," no violation occurred. Def.'s Mot. to Suppress at 9. Even assuming, *arguendo*, that Ms. Johnson is correct, the Court still finds that the traffic stop was valid, as Deputy Miller "articulate[d] a basis for a *suspicion* that a traffic violation might have been occurring." *United States v. Vercher*, 358 F.3d 1257, 1262 (10th Cir. 2004) (emphasis in original).

6

the right-hand lane; indeed, the gap appears wide enough to accommodate an additional vehicle. Accordingly, the Court finds that the driver of the pickup violated Okla. Stat. tit. 47, § 11-309(1), which requires a vehicle to "be driven as nearly as practicable entirely within a single lane."

In light of Deputy Miller's credible testimony and the supporting recording from his patrol vehicle's dashcam, the Court concludes that the driver of the pickup violated both Okla. Stat. tit. 47, § 11-604(A), and Okla. Stat. tit. 47, § 11-309(1). Accordingly, the Court finds that the traffic stop of the pickup in which Ms. Johnson was traveling as a passenger on February 5, 2023, was justified at its inception and, thus, constitutionally permissible. *See Gregoire*, 425 F.3d at 876; *Winder*, 557 F.3d at 1135.

**II.     Reasonable Suspicion of Other Criminal Activity**

Even absent the observed traffic violations described above, the Court finds that Deputy Miller harbored a "reasonable suspicion that other criminal activity may be afoot," which justified the traffic stop at its inception. *Martinez*, 910 F.3d at 1313 (internal quotation omitted). "For reasonable suspicion to exist, an officer must 'articulate something more than an inchoate and unparticularized suspicion or hunch." *Id.* "Reasonable suspicion is not, and is not meant to be, an onerous standard." *United States v. Simpson*, 609 F.3d 1140, 1153 (10th Cir. 2010). To satisfy this standard, an officer need not "rule out the possibility of innocent conduct" or have evidence suggesting "a fair probability of criminal activity." *United States v. Esquivel-Rios*, 725 F.3d 1231, 1236 (10th Cir. 2013) (internal quotations omitted). Rather, the officer must have a "particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266,

7

273 (2002) (internal quotation omitted). The existence of reasonable suspicion "does not depend upon any one factor, but on the totality of the circumstances." *United States v. Moore*, 795 F.3d 1224, 1229 (10th Cir. 2015).

The Court concludes that the traffic stop was supported by a reasonable suspicion of criminal activity, based on specific and articulable facts. Officer Wallace testified that he intended to pull over the Malibu after discovering its Illinois-issued license plate was expired. Although he attempted to situate himself behind the Malibu, he was prevented from doing so by the pickup, which was traveling, at times, within two to three feet of the Malibu's back bumper. He observed the vehicles change lanes multiple times in tandem and concluded, based on his training and experience, that the vehicles were traveling together. As Officer Wallace testified, when a "follow" car prevents a law enforcement officer from pulling over a "lead" car, it commonly indicates criminal activity. In addition, Officer Wallace discovered that the pickup was a rental car; he testified that using a rental car for illegal activity is a common tactic employed by criminals.

Officer Wallace informed other CITCO members, including Deputy Miller, that the pickup was preventing him from pulling over the Malibu. Shortly after doing so, the Malibu and pickup both exited at NE 36th Street. Officer Wallace testified that he found this to be "strange," due to the area's lack of places to rest while traveling. After exiting, he observed the pickup pull into a closed gas station, while the Malibu continued west on NE 36th Steet. Officer Wallace testified that it was clear the gas station was closed; there were several portable storage units, as well as a large dumpster, situated in its parking lot.

After learning that the pickup was preventing Officer Wallace from pulling over the Malibu, Deputy Miller traveled to the gas station on NE 36th Street. As he drove past the gas station, which he also observed to be closed, he noticed the pickup parked at a gas pump. Although he initially continued westbound on NE 36th Street, he later turned around. Shortly after doing so, he observed the pickup exit the gas station travelling east. Deputy Miller, in light of his training and experience, understood that the driver of the pickup intended to travel in the opposite direction in which Deputy Miller was initially travelling.

The above factors, in their totality, require a finding that the traffic stop was supported by a reasonable suspicion of criminal activity. Although each factor alone may be susceptible of innocent explanation, taken together, the factors amount to a "particularized and objective basis for suspecting legal wrongdoing." *Arvizu*, 534 U.S. at 273; *see also Simpson*, 609 F.3d at 1146 ("[T]he existence of objectively reasonable suspicion of illegal activity does not depend upon any one factor, but on the totality of the circumstances.") (internal quotation omitted). Deputy Miller was aware that the pickup was apparently attempting to prevent Officer Wallace from pulling the Malibu over, which is a tactic commonly associated with criminal activity. In addition, Deputy Miller observed the pickup parked at a closed gas station; after his patrol vehicle passed the station, the pickup immediately exited, traveling in the opposite direction.

The foregoing factors allowed Deputy Miller to "draw on [his] experience and specialized training to make inferences from and deductions about the cumulative information available to [him]." *Arvizu*, 534 U.S. at 273. The Court finds that the above

9

factors, in their totality, established reasonable suspicion "that other criminal activity may be afoot." *United States v. Martinez*, 910 F.3d 1309, 1313 (10th Cir. 2018) (internal quotation omitted). Accordingly, the traffic stop was justified at its inception. *See Mayville*, 955 F.3d at 829.

## *Conclusion*

For these reasons, the Court finds that the traffic stop of the pickup in which Ms. Johnson was traveling as a passenger was constitutionally permissible.

**IT IS THEREFORE ORDERED** that Defendant Tatyanna Marie Johnson's Motion to Suppress [Doc. No 50] is **DENIED.**

**IT IS SO ORDERED** this 27th day of July, 2023.

TIMOTHY D. DeGIUSTI
Chief United States District Judge