IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CR-23-71-D |
| ) | |
| TATYANNA MARIE JOHNSON, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

A three-charge superseding indictment charges Defendant Tatyanna Johnson with drug conspiracy in violation of 21 U.S.C. § 846, possession of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1), and interstate travel in aid of a drug trafficking enterprise in violation of 18 U.S.C. § 1952(a)(3). *See* Superseding Indictment [Doc. No. 139].[1] The charges stem from two alleged drug trafficking trips between Illinois and California—one in early January 2023 and one in early February 2023. Ms. Johnson, along with the other Defendants, was arrested in Oklahoma City on February 5, 2023 on the way back to Illinois from California.

On August 30, 2023, the Court conducted a *James*[2] hearing to determine the admissibility of certain out-of-court statements to be offered by the government at trial as

---

[1] Christopher Davis, Kanesha Gladney, and Anthony Allison have executed plea agreements with the government, leaving Ms. Johnson as the only remaining defendant in this case. *See* A. Allison Plea Agreement [Doc. No. 109]; K. Gladney Plea Agreement [Doc. No. 115]; C. Davis Plea Agreement [Doc. No. 127].

[2] *United States v. James*, 590 F.2d 575 (5th Cir. 1979); *United States v. Owens*, 70 F.3d 1118, 1123 (10th Cir. 1995).

alleged coconspirator statements under FED. R. EVID. 801(d)(2)(E). The hearing was requested by Ms. Johnson [Doc. No. 53], and the government agreed that the Court should make a pretrial determination of the admissibility of certain coconspirator statements [Doc. No. 83]. At the hearing, Ms. Johnson appeared personally and through appointed counsel, David Autry. The government appeared through Assistant United States Attorneys, Danielle Connolly and David McCrary.

The statements the government seeks to introduce at trial under Rule 801(d)(2)(E) are described in the government's Proffer [Doc. No. 137], and fall within three categories: 1) text messages between Ms. Johnson and Ms. Gladney from January 5, 2023 to January 9, 2023 regarding the alleged January 2023 trip [Doc. No. 137-1]; 2) text messages between Ms. Johnson and Ms. Gladney from January 31, 2023 to February 4, 2023 regarding the alleged February 2023 trip [Doc. No. 137-2]; and 3) statements provided by Ms. Gladney during a Rule 11 interview [Doc. No. 137 at 4]. At the hearing, the parties stipulated that the statements related to the February 2023 trip fall within Rule 801(d)(2)(E). Therefore, the only statements that remained at issue during the hearing were: 1) text messages between Ms. Johnson and Ms. Gladney from January 5, 2023 to January 9, 2023 regarding the alleged January 2023 drug trafficking trip [Doc. No. 137-1]; and 2) statements given by Ms. Gladney during her Rule 11 interview that relate to the January 2023 trip [Doc. No. 137 at 4].

At the hearing, the government offered the testimony of Officer Harrison Fincham, who is a Detective in the Special Operations group of the Oklahoma City Police Department and a Task Force Officer with the FBI, and who investigated the alleged crimes

at issue. Officer Fincham summarized statements made by Mr. Davis, Ms. Gladney, and Mr. Allison during their Rule 11 interviews, identified the users of the cell phone numbers that appear in Exhibit 1 of the government's Proffer, and explained the content of the text messages between Ms. Gladney and Ms. Johnson. Upon consideration of the hearing evidence, arguments of counsel, and the government's superseding indictment, the Court issues its findings.

### *Standard of Decision*

To show the admissibility of statements under Rule 801(d)(2)(E), the government must establish by a preponderance of the evidence that: (1) "'a conspiracy existed, (2) the declarant and the defendant were both members of the conspiracy, and (3) the statements were made in the course of and in furtherance of the conspiracy.'" *United States v. Owens*, 70 F.3d 1118, 1123 (10th Cir. 1995) (quoting *United States v. Urena*, 27 F.3d 1487, 1490 (10th Cir. 1994)). In making the necessary findings, the Court "may consider and rely on the actual coconspirator statements the government seeks to admit to determine whether a predicate conspiracy existed within the meaning of FED. R. EVID. 801(d)(2)(E)." *Id.* at 1124 (citing *Bourjaily v. United States*, 483 U.S. 171, 181 (1987)).

"[I]n deciding whether the offering party has satisfied its burden at a *James* hearing, the district court has the discretion to consider any evidence not subject to a privilege, including both the coconspirator statements the government seeks to introduce at trial and any other hearsay evidence, whether or not that evidence would be admissible at trial." *Id.* Some independent evidence, other than the statements themselves, must be presented linking the defendant to the conspiracy. *See id.*; *see also United States v. Martinez*, 825

F.2d 1451, 1453 (10th Cir. 1987). "Such independent evidence may be sufficient even when it is not 'substantial.'" *United States v. Lopez-Gutierrez*, 83 F.3d 1235, 1242 (10th Cir. 1996) (quoting *United States v. Rascon*, 8 F.3d 1537, 1541 (10th Cir. 1993)).

## *Discussion*

Applying the above principles to the hearing evidence in this case, the Court finds by a preponderance of the evidence that a conspiracy existed among the defendants as charged in Count I of the superseding indictment. The Court also finds that the conspiracy shown by the evidence was first formed on or about January 5, 2023 and continued until on or about February 5, 2023, when the defendants were arrested in Oklahoma City.

Based on the testimony of Officer Fincham, the proffered statements themselves, and other independent evidence, the Court further finds that the statements discussed at the hearing were made in the course of and in furtherance of the conspiracy.[3] "Statements by a conspirator are in furtherance of the conspiracy when they are intended to promote the conspiratorial objectives." *United States v. Townley*, 472 F.3d 1267, 1273 (10th Cir. 2007) (internal quotation marks omitted). As summarized by the Tenth Circuit sitting *en banc*:

> Examples of statements which may be found to satisfy the "in furtherance" requirement include
>
> > statements made to induce enlistment or further participation in the group's activities; statements made to prompt further action on the part of conspirators; statements made to reassure members of a conspiracy's continued existence; statements made to allay a co-conspirator's fears; and statements made to

---

[3] Nothing herein, however, precludes Ms. Johnson from making timely objections regarding particular proffered statements if the use of such statements would otherwise be objectionable.

4

> keep co-conspirators abreast of an ongoing conspiracy's activities.
>
> [*United States v.*] *Nazemian*, 948 F.2d [522,] 529 [(9th Cir. 1991)]. "When inquiring whether a statement was made 'in furtherance of' a conspiracy, we do not focus on its actual effect in advancing the goals of the conspiracy, but on the declarant's intent in making the statement." *Id*. No talismanic formula exists for ascertaining whether a particular statement was intended by the declarant to further the conspiracy and is therefore admissible in accordance with the agency theory of conspiracy. *See* [*United States v.*] *Wolf*, 839 F.2d [1387,] 1393 [(10th Cir. 1988)]. To the contrary, this determination must be made by examining the context in which the challenged statement was made. *See* [4 J. Weinstein & M. Berger], *Weinstein's Evidence* [¶ 801(d)(2)(E)[01]] at 801-318 to -323 [(1992)].

*United States v. Perez*, 989 F.2d 1574, 1578-79 (10th Cir. 1993) (en banc).

Through the early January 2023 text messages, Ms. Gladney, among other things, attempted to induce Ms. Johnson to act as a driver for the January 2023 drug trip [Doc. No. 137-1 at 3]; discussed logistics related to timing of the drug trip [Doc. No. 137-1 at 7, 10]; discussed logistics related to the number of cars[4] and drivers involved in the drug trip [Doc. No. 137-1 at 11-12]; referenced the possibility of taking additional drug trafficking trips for the entirety of 2023 [Doc. No. 137-1 at 16]; discussed keeping the group's whereabouts secret while away on such trips [Doc. No. 137-1 at 18]; discussed the building of a team to continue the drug operation [Doc. No. 137-1 at 21]; discussed payment for serving as drivers for the drug trips [Doc. No. 137-1 at 39, 46]; and discussed the desire to take

---

[4] Officer Fincham testified that, based on his experience investigating these types of crimes and operations, drug trafficking operations will typically use one car as a "load car" to transport the drugs and a second car to carry someone higher up in the drug operation so that person can keep watch and provide instruction over the load car as the group travels. Separating those higher up in the operation from the drugs themselves also decreases the likelihood that they get charged with possession of the drugs.

additional drug trips[5] [Doc. No. 137-1 at 52]. These text messages all fall squarely within the bounds of the examples provided by the Tenth Circuit in *Perez*.

Mr. Davis's and Ms. Gladney's statements before the January 2023 trip take a similar tone. Officer Fincham testified that, while interviewing Ms. Gladney, she stated that she was initially contacted in early January 2023 by Mr. Davis, who was trying to find individuals to drive from Illinois to California and back to pick up methamphetamine. Mr. Davis asked Ms. Gladney if she had a license and would be willing to make the drive from Illinois to California for $800. In that same conversation, Ms. Gladney informed Mr. Davis that Ms. Johnson would be willing to assist in driving during the January 2023 drug trip.

At the hearing, Ms. Johnson's counsel attempted to show that Ms. Johnson was unaware that the January 2023 trip would be, or was, taken for the purpose of retrieving drugs. Based on all the evidence presented, the Court does not find Ms. Johnson's purported ignorance believable or consistent with the evidence. First, despite Ms. Johnson never explicitly stating in the text messages that she knew the January 2023 trip was a drug trafficking trip, Officer Fincham testified—and common sense suggests—that it would be quite uncommon for a participant in a drug trafficking operation to explicitly implicate

---

[5] Officer Fincham testified that, based on his experience investigating these types of crimes and operations, Ms. Johnson likely viewed the drug trips as business-oriented, as opposed to a trip for pleasure. This is evidenced by Ms. Johnson telling Ms. Gladney that she was low on money and needed to take "another trip asap." *See* Proffer, Ex. 1 [Doc. No. 137-1] at 52. Officer Fincham further testified that the text messages sent by Ms. Gladney to Ms. Johnson on January 5, 2023, in which Ms. Gladney asked Ms. Johnson if she wanted to go to "Cali" and return to Illinois just three days later on January 8th, show that Ms. Johnson understood the January 2023 drug trip to be short and business-like in nature. *See id.* at 3. Ms. Johnson was also aware that she would be paid for this trip, an arrangement to which she agreed. *See id.* at 3-4.

6

themself in the crime. Second, Officer Fincham testified that it would be uncommon for individuals associated with a drug trafficking operation to bring along a person totally ignorant of the purpose of the trip, so as to potentially make that person a witness. Officer Fincham also testified that Ms. Gladney and Mr. Allison—who were in the same car as Ms. Johnson during the January 2023 and February 2023 trips—stated that the participants knew the nature of the trips, which casts serious doubt on Ms. Johnson's purported ignorance. Third, Officer Fincham testified that, during Mr. Davis's Rule 11 interview, he stated that, upon arriving back in Illinois after the January 2023 trip, the defendants gathered at a house. Once inside the house, Mr. Davis opened a black duffle bag that was filled with methamphetamine and gave approximately three grams of methamphetamine to the homeowner in exchange for the homeowner's silence regarding the activity in the home. Mr. Davis told Officer Fincham that Ms. Johnson was present in the home when Mr. Davis opened the duffle bag and gave the methamphetamine to the homeowner.

The evidence presented further established that the trips in question involved two vehicles and multiple drivers; were substantially straight-through trips between Illinois and California; were coordinated by Mr. Davis; resulted in payment to Ms. Johnson and other participants; the involved vehicles were driven in tandem; and the trips had no purported legitimate purpose.

### *Conclusion*

Accordingly, the Court finds that the government has shown, by a preponderance of the evidence, that Christopher Davis, Kanesha Gladney, Anthony Allison, and Tatyanna Johnson were members of a conspiracy as alleged in the superseding indictment, and that

the conspiracy was formed on or about January 5, 2023 and continued through on or about February 5, 2023. The Court further finds, by a preponderance of the evidence, that the at-issue statements described in the government's Proffer and during the *James* hearing were made during the course of the conspiracy and fall within the categories of statements that would generally be considered in furtherance of that conspiracy. This ruling does not bar contemporaneous objection by Defendant at trial regarding particular statements, as set forth herein.

**IT IS SO ORDERED** this 13th day of September, 2023.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge

the conspiracy was formed on or about January 5, 2023 and continued through on or about February 5, 2023. The Court further finds, by a preponderance of the evidence, that the at-issue statements described in the government's Proffer and during the *James* hearing were made during the course of the conspiracy and fall within the categories of statements that would generally be considered in furtherance of that conspiracy. This ruling does not bar contemporaneous objection by Defendant at trial regarding particular statements, as set forth herein.

**IT IS SO ORDERED** this 13th day of September, 2023.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge